■ ERNEST RIDDICK, Respondent, v CITY OF NEW YORK, Appellant. [772 NYS2d 294]—

Order, Supreme Court, New York County (Faviola Soto, J.), entered April 25, 2003, which denied defendant's motion for summary judgment dismissing the complaint, unanimously reversed, on the law, without costs, the motion granted and the

complaint dismissed. The Clerk is directed to enter judgment in favor of defendant dismissing the complaint.

Plaintiff, a New York City Police Department detective, was terminated from the Police Department effective May 27, 1997, following several instances of, inter alia, verbal abuse and assault. Specifically, in February 1994, plaintiff had a confrontation with his estranged wife, struck her in the face and threatened to kill her. As a result, the Department placed plaintiff on modified assignment and took his weapon away, but within a few months, restored him to full duty. The victim did not press criminal charges.

Thereafter, in December 1995, plaintiff assaulted his girlfriend by repeatedly punching her about the head and face in the presence of her three young children. Plaintiff was suspended without pay, arrested and charged with assault in the third degree, endangering the welfare of a child and harassment in the second degree. The Department placed plaintiff on modified assignment, referred him for alcohol counseling and filed charges and specifications specifically alleging that plaintiff had committed assault in the third degree in violation of a Department directive.

On September 3, 1996, plaintiff, who was represented by counsel, entered into a negotiated plea agreement with the Police Department. Specifically, plaintiff pleaded nolo contendere and agreed to 25 days suspension, forfeiture of five vacation days and placement on "Dismissal Probation" for one year. The plea agreement further provided that plaintiff understood that "the Police Commissioner may impose punishment of Dismissal or any lesser penalty he deems appropriate at any time during such period." The Commissioner approved the plea agreement on October 2, 1996. The court dismissed the criminal complaint because the complainant refused to press charges.

Less than three weeks after plaintiff executed the written plea agreement, he again assaulted his girlfriend and in addition assaulted her 13-year-old daughter on her head and face. As a result, the police again arrested plaintiff and charged him with assault in the second degree, assault in the third degree, resisting arrest, endangering the welfare of a minor and harassment in the second degree. Consequently, the Department filed yet another set of charges and specifications, accusing plaintiff of assault in the second degree, assault in the third degree, endangering the welfare of a minor and resisting arrest, all in violation of Department directives. The Office of the Advocate for the Police Department recommended summary termination based on the fact that before the most recent assault, he had agreed to "Dismissal Probation" for a similar offense.

During his tenure with the Police Department, which commenced in 1984, plaintiff was referred to the Police Department's Alcohol Counseling Service Unit (CSU). The first referral was in 1990 after he engaged in physical altercations with his wife, threatened suicide and threw his gun at her. In 1994, the Department again referred plaintiff to CSU after he admitted he had resumed drinking. After his arrest in 1995, he was once again referred to CSU. At the time of his dismissal from the police force, plaintiff again admitted he was still drinking. According to plaintiff, despite his claim that he was no longer drinking at the time he was terminated, he was drinking, to some extent at least, until his last drink almost two years after his termination.

Against this factual backdrop, plaintiff sued New York City alleging, inter alia, that the City violated the Executive Law. Specifically, plaintiff claimed the City discriminated against him due to his alcohol dependency and that the City breached its obligation to rehabilitate him. The City moved to dismiss the complaint for failure to state a cause of action. In seeking dismissal, the City maintained that it had grounds to justify his termination wholly independent of plaintiff's alcoholism. The motion court (Richard F. Braun, J.) dismissed as untimely plaintiff's additional claim, which, for all practical purposes, sought CPLR article 78 relief and is not at issue on appeal, and denied the balance of the City's motion.

Thereafter, the City sought summary judgment dismissing the complaint, an application the City made more than 120 days after plaintiff filed the notice of issue. In that motion, the City argued that it terminated plaintiff for a legitimate, nondiscriminatory reason and that he did not have a disability of a kind which protected him under the New York State Human Rights Law. Plaintiff responded that the earlier order denying the City's motion to dismiss for failure to state a cause of action was the law of the case and, further, that the motion was untimely. Substantively, plaintiff maintained that the City was aware of his alcoholism and that he was not drinking at the time he was terminated.

The court did not deny the summary judgment motion as untimely. Rather, the court found that the prior order which had denied the City's motion to dismiss the first cause of action was the law of the case. In addition, the court concluded that issues of fact existed as to whether plaintiff suffered from a disability at the time of his termination and whether his dismissal was the result of that disability or was for a legitimate, nondiscriminatory reason.

We disagree and reverse. Initially, we find plaintiff's reliance on the law of the case doctrine misplaced. That doctrine is inapplicable where, as here, a summary judgment motion follows a motion to dismiss (*see Gannone v Wittman*, 232 AD2d 298 [1996]) as the scope of review is distinct (*see Tenzer, Greenblatt, Fallon & Kaplan v Capri Jewelry*, 128 AD2d 467, 469 [1987]). We also reject plaintiff's argument that the order denying the City summary judgment should be affirmed because the motion was untimely. CPLR 3212 (a) provides that a party must move for summary judgment no later than 120 days after the filing of the note of issue, "except with leave of court on good cause shown." We find no basis to disturb the Supreme Court's decision to consider the motion, especially where, as here, a prompt decision on a meritorious motion serves the interests of judicial economy (*see Baijnauth v City of New York*, 286 AD2d 254 [2001]; *Goodman v Gudi*, 264 AD2d 758 [1999]) and, further, where plaintiff has not even alleged, let alone demonstrated, prejudice (*see Luciano v Apple Maintenance & Servs.*, 289 AD2d 90, 90 [2001]; *Acosta v 888 7th Ave. Assoc.*, 248 AD2d 284 [1998]). Indeed, the statute "does not provide a safe haven for frivolous or meritless lawsuits and '[f]oreclosing the opportunity for a summary judgment motion in a sense punishes the whole court system by keeping a case alive when an earlier arrangement for a decent funeral is possible' " (*Rossi v Arnot Ogden Med. Ctr.*, 252 AD2d 778, 779 [1998] [Graffeo, J.], quoting Siegel, Supp Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C3212:12, 1998 Pocket Part, at 62-63).

Turning to the merits, we note that alcohol dependency qualifies as a disability under the Human Rights Law (Executive Law § 292 [21] [a]; *see Matter of McEniry v Landi*, 84 NY2d 554, 559 [1994]). After a plaintiff establishes a prima facie case that the complained-of conduct was causally related to his or her disability, the burden shifts to the defendant to show that the disability prevents him or her "from performing the duties of the job in a reasonable manner or that the employee's termination was motivated by a legitimate nondiscriminatory reason" (*id.* at 558).

Plaintiff's reliance on *McEniry* is misplaced. There, the Court of Appeals interpreted the Human Rights Law to protect a rehabilitated or rehabilitating substance abuser from *retroactive* punishment by his or her employer. In finding for the petitioner, the Court of Appeals warned that "[o]ur holding is not intended to create a safe haven for individuals who resort to recovery programs as a pretext for avoiding otherwise legitimate disciplinary action, nor do we imply that in every case where an

alcoholic is purportedly rehabilitated all disciplinary action is prohibited" (*id.* at 560). The Court further explained that the review is "individualized," and, "[t]hus in the appropriate case, an alcoholic who is found not to be actually rehabilitated, or who is shown to have an established propensity to relapse may be found unable to perform the job in a reasonable manner" (*id.* at 561).

The petitioner in *McEniry* demonstrated that although his poor attendance and lateness were alcohol related, those problems predated his rehabilitation. In stark contrast *here*, plaintiff failed to raise an issue of fact as to whether he was rehabilitated at the time of his termination. Indeed, our "inquiry must focus on [plaintiff's] status as of the time of actual termination and not earlier" (*McEniry*, 84 NY2d at 560). The record demonstrates that plaintiff was unsuccessful in his rehabilitative efforts. Moreover, by plaintiff's own admission, he could not have been rehabilitated until after he was terminated. Therefore, we find that the City did not engage in unlawful employment practices by terminating him after giving him repeated opportunities to rehabilitate himself (*id.* at 561).

In any event, regardless of whether plaintiff raised any issue of fact that his disability did not prevent him from performing his job in a reasonable manner, plaintiff failed to raise an issue of fact that the City terminated him, not for his alcoholism, but rather for his violent, assaultive behavior (*see Matter of Murolo v Safir*, 246 AD2d 653 [1998], *lv denied* 91 NY2d 813 [1998] [no direct, causal connection between petitioner's status as an alcoholic and his deliberate and calculated act of calling in a false alarm in order to commit a theft at his own firehouse]). Indeed, plaintiff's alcohol problem does not immunize him against the legitimate, nondiscriminatory legal action taken by the City in response to his violent criminal actions (*see Matter of Hagmaier v Bratton*, 245 AD2d 147 [1997] [disability prohibition of Human Rights Law does not bar Police Commissioner from discharging police officer based on his misconduct, committed while out of town to attend a memorial service for slain police officers, by twice sliding down a hotel banister naked and in discharging a fire extinguisher without cause resulting in early morning evacuation of hotel]).

Notably, plaintiff does not challenge the negotiated plea agreement he voluntarily entered to dispose of the pending departmental charges resulting from his first assault on his girlfriend. Plaintiff specifically agreed that "the Police Commissioner may impose punishment of Dismissal or any lesser penalty he deems appropriate at any time during [the Dismissal Period]." The

Commissioner terminated plaintiff under the terms of his plea after plaintiff committed another, similar assault shortly thereafter. Since plaintiff agreed to dispose of the pending departmental charges and specifications pursuant to a negotiated plea, plaintiff—in all fairness to himself, his fellow officers, the Department and the public—should be bound by those terms (*see People v Watson*, 199 AD2d 184 [1993], *lv denied* 83 NY2d 859 [1994]; *People v Garcia*, 172 AD2d 330 [1991], *lv denied* 78 NY2d 922 [1991]; *see also Matter of Wolfe v Jurczynski*, 241 AD2d 88 [1998] [discipline imposed resulting in loss of petitioner's position as a police lieutenant, after incident wherein he had threatened a civilian with a gun while off duty and intoxicated, imposed at time when he agreed to be bound by the conditions outlined in settlement agreement as alternative to ordinary disciplinary process]).

Finally, plaintiff contends that the City breached its obligation to rehabilitate him and otherwise to accommodate his disability. However, at the time of plaintiff's termination, Executive Law § 292 (21) did not require an employer to provide "reasonable accommodations" (*see* L 1997, ch 269, § 1). This requirement became effective as of January 1, 1998, after plaintiff was terminated (L 1997, ch 269, § 5). Consequently, plaintiff's claim must fail (*see DiSanto v McGraw-Hill, Inc./Platt's Div.*, 220 F3d 61, 64 [2d Cir 2000]). In any event, and even if we applied Executive Law § 292 (21) to this case, we believe the numerous occasions the City did try to assist plaintiff in his recovery and addiction by providing services, counseling and placing him on modified duty—all to no avail—would lead us to no different conclusion. Concur—Tom, J.P., Mazzarelli, Ellerin, Lerner and Marlow, JJ.